**Marianne Elizabeth REEN, Plaintiff**
**vs.**
**Thomas Kevin REEN, Defendant**

No. 75641

Probate and Family Court
Commonwealth of Massachusetts

**December 23, 1981**

**Gerald DiSanti,** counsel for plaintiff.
**Daniel Kelly,** counsel for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came for hearing before the court on a complaint for divorce brought by Marianne Elizabeth Reen, the plaintiff (wife), against Thomas Kevin Reen, the defendant (husband), on grounds of crual and abusive treatment.

I find as follows:

### LENGTH OF MARRIAGE

The parties were married on January 27, 1968 and have lived together for approximately ten (10) years. The defendant left the marital residence on March 27, 1978.

### CONDUCT OF THE PARTIES DURING MARRIAGE

At the beginning of the marriage the plaintiff was working as a registered nurse at the Mercy Hospital in Springfield, Prior to the marriage the defendant was working part-time as a lab technician at the Mercy Hospital. The plaintiff purchased all the furniture for the marriage, since prior to her marriage she was living at home with her parents and saving money for the forthcoming marriage. The parties initially lived in a five-room, two-family house at 105 Woodmont St. in Springfield Massachusetts. The defendant began working in January of 1968 for Monsanto Chemical Company as a chemical techpicial and was attending American International College evenings to finish his degree as a chemistry major, which he completed three (3) years later.

The relationship of the parties was not without verbal arguments and fights. They fought at their wedding reception and continued that fight until they were flying to New York City that evening. The parties endured a serious sexual problem in that the marriage was not consummated for the first two months.

Both parties were working and saving money for a down payment on a house and financing the defendant's education. The parties had one car which defendant drove, and the plaintiff took a bus back and forth to work. In June of 1969 the parties purchased a duplex house on 104-106 Savoy Avenue, Springfield, Massachusetts. The plaintiff's parents helped them with the down payment.

After graduation from American International College the defendant decided he would attend dental school and follow in his brother's footsteps. The parties both agreed that it would be difficult for

several years and that the plaintiff would have to give up having a family. The defendant stated that it would be to both of their advantage in the long run.

The defendant graduated from American International College in June of 1971. He started working for Litton Industries in January of 1971 and worked for them until June of 1972. In 1969 the plaintiff stated saving as much of her paycheck as possible to pay for tuition at dental school. When the defendant first applied to dental school he was not initially accepted. During that time the plaintiff was working at Mercy Hospital. She came in contact with a Dr. Irving Meyer, who was on the Board of Admission at Tufts Dental School. The plaintiff explained to Dr. Meyer that her husband had been rejected and asked if he could assist so that the defendant would be accepted in September. Through the plaintiff's efforts and the assistance of Dr. Irving Meyer, the defendant was accepted to dental school in September of 1972.

They decided to keep the house on 104-106 Savoy Avenue and rent it out in order to pay the mortgage. They moved to Boston and the plaintiff then secured a full-time job at St. Elizabeth's Hospital in the dialysis unit. She also worked an extra job doing home-patient care.

The defendant was attending dental school full-time and studying every night at the library. He would leave at 7:00 in the morning and would not return home until 11:30 in the evening. The plaintiff would prepare two (2) meals for him, lunch and dinner, that he would take with him when he left in the morning. The plaintiff was the sole monetary provider, paying all bills, living expenses and education loans. The plaintiff also did all the cooking and cleaning and household duties. The defendant was busy going to school and studying late at the library. Their lives were becoming more difficult since they were spending very little time together and had very little money to go anywhere. During this time the plaintiff's parents were sending them money to help pay expenses.

During the three (3) year program at Tufts Dental School the defendant worked part-time for a short period of time as it was mandatory as part of the educational program. While the defendant was in school the plaintiff would organize his school files and edit his papers, read some of his assignments textbooks and brief him on their contents. She submitted to his practicing dental techniques, which were sometimes distasteful and which included replacing all perfectly good fillings just for his experience.

In December of 1974 the defendant came home and told his wife he was leaving. He moved out of the house for two (2) months and never called to tell the plaintiff where he was. The plaintiff considered moving back to Springfield as she was emotionally distraught. In February the defendant came back home and said that he was sorry and, further, that he had applied to Northwestern graduate program for Orthodontics in Chicago. This program included an additional two (2) years of post-graduate work.

In June of 1975 the defendant graduated from dental school and the parties moved to Chicago where the defendant enrolled in the Orthodontic program.

The parties had little savings at the time and the plaintiff decided that they could afford to move. As soon as the parties moved to Chicago the plaintiff began doing home duty care for her aunt who was a diabetic. The plaintiff's aunt would give the parties $50 per week plus purchase all of their food. The plaintiff later began working at St. Francis Hospital in Evanston, illinois.

When the parties made the above move to Chicago the plaintiff's parents helped finance the trip and paid the initial rent and security deposit for their apartment.

Living was becoming financially more difficult for both parties and they barely had any money for necessities. The defendant was very busy at school and did not work at all during this two (2) year period. He kept telling the plaintiff that everything would be different when he

graduated and that they would have money to do all of the things that they had missed out on all of those years and that they would be able to start a family when he graduated.

After the defendant graduated from dental school the parties had planned that if they did not have a family the plaintiff would enroll in baccalaureate program program in order to obtain a bachelor's degree in nursing and later work toward a master's degree in nursing so that she could join the teaching profession. The defendant always indicated to the plaintiff that as soon as he graduated and began earning money he would pay for the plaintiff's education.

In July of 1977 the defendant graduated from Northwestern and the parties moved back to Springfield where they lived with the plaintiff's parents from August until approximately September when the parties moved to Chestnut Towers Apartments. At this time the defendant began working for his brother. The Plaintiff was not initially working but eventually gained employment at Springfield Hospital. This was in January of 1978.

When the parties moved to Springfield the defendant seemed to have a personality change. He began spending money freely, buying a complete new wardrobe of clothes (which he said he needed for the office), a new 1977 Oldsmobile Cutlass Supreme and an airplane. At the same time he became very abusive toward the plaintiff, both mentally and physically. He refused to give her any money for groceries and he stated that "this was his money and not theirs."

The plaintiff wanted to start a family at this time since they had been married for approximately ten (10) years and had sacrificed many of the things she had desired.

For the plaintiff financially, life was just as bad as it had always been. She did not have any money for clothes or furniture; however, the defendant was living high. She still did not have a car and the defendant said they could not afford a second car. He said he had to finish paying off his loans. He started going out evenings without the plaintiff and coming hime at approximately 12:00 midnight. He became more physically abusive and struck the plaintiff on several occasions while they were living at Chestnut Towers Apartments. The holidays were arriving and the defendant refused to give the plaintiff any money to buy Christmas presents. She realize that their marriage was in serious trouble and mentioned to her husband that they should seek the help of a marriage counselor which the husband agreed to. The husband later refused to do so and at this time he stopped giving her any household money and only paid for the rent. In January of 1978 the plaintiff went back to work at Baystate Medical Center in the operating room. At this time the defendant appeared happy that his wife returned to work. He decided that they could afford to buy a house. At the end of January 1978 the parties signed a purchase and sale agreement for the property located at his present address. The defendant withdrew $3,000 from their joint savings account and later revoked the joint purchase and sale agreement and joint loan application without the plaintiff's knowledge and purchased the property in his name alone.

During this time the plaintiff could not afford a car and was taking a bus back and forth to work. In March of 1978 she discovered that the defendant was dating a secretary from his office and that he had been dating her ever since they had moved back to Springfield. She asked her husband to go to a marriage counselor but he said he had gotten what he wanted from her and was moving out.

The defendant left on Friday, March 27, 1978 taking some personal belongings and their bankbook which contained approximately $3,000. The plaintiff had left for work at 7:00 A.M. and when she returned home at 4:30 the defendant had taken the rest of his clothes, their stereo, portable television and $1,200 in cash which they had saved at home from her earnings. The defendant left his wife with

a couch and two chairs, a mattress and boxspring which she had bought when they were first married ten (10) years ago. She did not have a car or any money in the bank. Her rent was due in a couple of days so she called her parents who paid her April rent. The defendant refused to talk to her after this and finally, in May, told her he wanted a divorce and that he had seen a lawyer. He also told her that he never had any intentions of going to a marriage counselor and was just trying to gain time to set himself up financially so she would never get anything from him. The plaintiff then saw a psychiatrist for approximately three (3) months and lost weight, going from 110 pounds to 80 pounds.

During the pendency of the divorce, the defendant was ordered to pay the plaintiff support of $100 per week. The defendant is constantly in arrears and as of January 12, 1981 is in arrears for approximately five (5) weeks.

## AGE OF THE PARTIES

The Plaintiff is thirty-four (34) years of age and the Defendant is thirty-five (35) years of age.

## HEALTH OF PARTIES

The health of the plaintiff is good, except for a chronic finger infection. The plaintiff has treated for this condition since 1977. The health of the defendant is good, except for osteo-arthritis in his wrists.

## STATION IN LIFE

The plaintiff's station in life is middle income. She is a diploma nurse, and resides in the Springfield downtown area in a one-bedroom luxury apartment.

The defendant's station in life is high-income. He is well respected in the professional residental community. He presently lives in a $75,000 home in Springfield.

## OCCUPATION OF THE PARTIES

The plaintiff's occupation is a diploma Registered Nurse in the operating room at the Baystate Medical Center, Springfield Hospital Unit.

The defendant's occupation is an Orthodontist employed by David B. Reen, D.M.D., P.C.

## AMOUNT OF INCOME TO PARTIES

The plaintif is currently earning a base salary of $14,352 with overtime of approximately $4,648.

The defendant's earnings are $80,000. He is also receiving a total rental income from a two-family house on Savoy Avenue in Springfield, Massachusetts that both parties own jointly for a total of $385 per month.

## VOCATIONAL SKILLS

The plaintiff has the following vocational skills which were obtained in the following manner:

---

chart 1

| Skill | How Obtained |
|---|---|
| Diploma Registered Nurse | Mercy Hospital School of Nursing |

The defendant has the following vocational skills which were obtained in the following manner:

| Skill | How Obtained |
|---|---|
| Bachelor's Degree in Libral Arts | American International College |
| Dentist | Tufts Dental School |
| Orthodontist | Northwestern University |

## EMPLOYABILITY OF PARTIES

The plaintiff, as a nurse, is well-received in the labor force in this region.

The defendant is employed by his brother. His future employability as an orthodontist is excellent.

## ESTATE OF THE PARTIES

The plaintiff owns the following property with values as attributed to each below:

1. One-half (½) interest in real estate at 104-106 Savoy Avenue, Springfield, Massachusetts, as tenants by the entirety, with a fair market value of $30,000. - One-half interest - $15,000. Condition - poor.
2. No savings.
3. No pension plan until ten (10) years of service.
4. Disability insurance after ninety (90) days, sixty (60%) percent of salary.
5. Twelve (12) sick days per year.
6. Household furniture, fair market value of $2,000.
7. Life insurance in amount of $3,000.

The defendant owns the following properties with values as attributed to each below:

Chart 2.

### FAIR MARKET VALUES

| | |
|---|---:|
| 1. Professional licenses to practice Dentistry and Orthodontics. (Based on actuarial calculation of present value, after taxes) | $800,000.00 |
| 2. Residence at Springfield Street, Springfield, Mass. | 75,000.00 |
| 3. One-half (½) interest in real estate located at 104-106 Savoy Avenue, Springfield, Mass. Condition—poor | 15,000.00 |
| 4. 1977 Oldmobile | 2,300.00 |
| *5. Profit Sharing Plan as of June 30, 1980 | 21,480.00 |
| *6. Pension Plan as of June 30, 1980 | 15,010.00 |
| 7. Disability Benefit and Death Benefit equal to pension and profit sharing plan. | |
| 8. Aircraft, fair market value of $6,200., which he states he sold to his brother for $2,000. | |

*The above profit and pension plans are subject to be funded on June 30, 1981 for approximately an additional $30,000. This is in addition to $80,000. in salary.

## LIABILITIES OF THE PARTIES

The **plaintiff** has the folling liabilities:

1. Internal Revenue Service: $1,000.
2. One-half (½) of mortgage for 104-106 Savoy Avenue, Springfield, Massachusetts: $5,000.

The **defendant's** liabilities are set forth in his Financial Statement as follows:

| | |
|---|---:|
| School Debts | $24,628.00 |
| Mortgage-Home | 50,951.00 |
| Mortgage-second | 4,300.00 |
| Mortgage-2 fam. | 5,000.00 |
| Notes-3rd National | 11,164.00 |
| Insurance owed | 2,967.00 |
| Charge Card | 2,042.00 |
| IRS Tax Due-1978 | 1,745.00 |
| Car-1977 Olds | 246.00 |
| TOTAL LIABILITIES | $103,043.00 |

## NEEDS OF THE PARTIES

The plaintiff is capable of meeting her usual needs. She has been currently working toward her bachelor's degree by attending night school at Springfield Technical Community College. She is interested in continuing her education on a full-time basis which would increase her chances for a better position with higher income. The plaintiff is in need of support from the defendant in consideration of this special need in areas of maintenance, tuition and books.

The defendant is capable of meeting his usual needs and is not in need of support from the plaintiff.

## OPPORTUNITY FOR FUTURE ACQUISITION OF CAPITAL ASSETS

The plaintiff has a minimal opportunity for future acquisition of capital assets considering that her salary from nursing will provide an average standard of living.

The defendant does have the opportunity for future acquisition of capital assets in consideration of current significant income and substantial future annual incomes with which to acquire capital assets, present employee pension and profit sharing plans.

The defendant is believed to have an excellent opportunity to acquire future capital assets by virtue of his training, profession and reputation and demonstrated prior earnings.

## OPPORTUNITY OF THE PARTIES TO ACQUIRE FUTURE INCOME

The plaintiff's opportunity is governed and limited by wage and salary structure at the Springfield Hospital. Overtime is flexible and not guaranteed.

The defendant is a practicing Orthodontist in his brother's corporation. His salary is governed by his brother's generosity. In a period from September 1977 to December 31, 1980, three and one-quarter (3¼) years, the defendant has a total gross salary of $167,000, plus deferred income as of June 30, 1980 of $36,490. (The plan is due to be funded again on June 30, 1981)

The defendant also retains the rental income of $4,620 annually as well as the tax deductions for depreciation and maintenance from 104-106 Savoy Avenue, Springfield, Massachusetts.

## CONTRIBUTION TO ACQUISITION, PRESERVATION, OR APPRECIATION IN VALUE OF PARTIES' ESTATE

The plaintiff, during the course of their marriage, has contributed to the acquisition, preservation and appreciation in value of the defendant's estate by being the sole contributor of the majority of income to their family unit from the date of their marriage, **i.e.,** January, 1968, to August of 1977, approximately nine and three-quarter (9 ¾) years, by contributing a total of $120,215, which enabled the defendant to acquire an Undergraduate Degree in Liberal Arts, a Degree in Dentistry and a Degree to practice orthodontic care.

The plaintiff made herself available for security on loans to the defendant, actively participated in the defendant's management of his financial security, provided contacts with family and friends to assist in the defendant's appreciation of his estate, provided emotional support for the defendant while in college which had a direct relationship to the defendant's preserving and appreciating the marital estate.

The defendant, during the course of

their marriage, was for the most part a student. He contributed a miniscule amount of finances, if any, to the acquisition, preservation or appreciation of the plaintiff's estate.

## CONTRIBUTION TO HOME

The plaintiff contributed to the care and maintenance of the home by assuming full responsibilities for support of the defendant and maintenance of that home. The plaintiff contributed the time and effort in furthering her husband's career by helping him with his studies, preparing meals, house cleaning, washing and to the extend of allowing defendant to use the plaintiff to practice filling teeth while the defendant was in dental school.

The plaintiff worked all of the years of their marriage, including extra jobs, to aid her husband through school. She has foregone the benefit of the prime years of her life for which to bear children. She is now thirty-four (34) years of age. She has started late in life to acquire a bachelor's and master's degree in nursing. Prior to their marriage the plaintiff worked as a Registered Nurse and saved money in order to purchase furniture for the forthcoming marriage. During their marriage she worked to save money for a down-payment and to finance her husband's education and the purchase of a duplex house at 104-106 Savoy Avenue. She was influential in getting her husband accepted in dental school. In addition, the plaintiff's parents gave her and her husband monies with which to provide necessities. The plaintiff's aunt, while they were living in Chicago, furnished not only money but also food and other necessities.

The defendant's contribution to the home was minimal since he was primarily concerned with obtaining a professional education and licenses to practice that profession.

## CONCLUSIONS OF LAW

That a divorce shall be granted to the plaintiff (wife) against the defendant (husband) on the grounds of crual and abusive treatment.

That the defendant's (husband's) license to practice orthondontia has been considered as a marital asset to be included as a property to be distributed under Section 34 of Chapter 208 of the General Laws.

That the personal property of the parties has been distributed to their mutual satisfaction.

That the real estate at No. 104-106 Savoy Avenue, Springfield, Massachusetts, held by the parties as tenants by the entirety, and has a fair market value of $30,000, subject to an outstanding mortgage in excess of $10,000, should be conveyed to the husband.

The parties agreed that the husband was to have title to the residence at Springfield Street, Springfield, Massachusetts which has a market value of $75,000 and is subject to two mortgages amounting to approximately $55,000.

**Rudolph A. Sacco, Justice**
**Probate & Family Court**